**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**
_____

No. 97-20169
Summary Calender
_____


LUCILLE L. LAPAGLIA,

Plaintiff-Appellant,

VERSUS

AIR LIQUIDE AMERICA CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

(96-CV-2216)
_____
September 11, 1997


Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Lucille Lapaglia appeals a summary judgment entered on her age and disability discrimination claims against Air Liquide America Corporation ("ALAC").  Finding no error, we affirm.


I.

_____

[*]  Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Lapaglia worked as the Fleet Department Secretary at Big Three Industries from 1983 until February 1994, performing numerous administrative duties, including, among other things, leasing, licensing, titling, and registering the company's fleet of vehicles. She received training and was given greater amounts of responsibility as she gained experience. She excelled in her job, and her superiors spoke highly of her.

Sometime prior to 1994, ALAC acquired Big Three Industries and merged it with one of its subsidiaries, Liquid Air. The new company implemented a plan for downsizing, and Lapaglia was released. Shortly after her release, Lapaglia learned that ALAC was hiring new employees. Although she applied several times for various positions, she was never rehired.

Lapaglia filed the instant action in July 1996, alleging that ALAC refused to hire her because she is fifty-three years old. She also contends that she is being denied employment because of her relationship and association with her husband, an individual with a known disability. The district court granted summary judgment for ALAC.

## II.

Lapaglia applied for, and was rejected for, ten different positions. She alleges violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Age

2

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, corresponding to each denial.

We reviews a grant of summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### A.

Lapaglia's first claim arises from her application for employment with ALAC as a licensing and fuel tax assistant. She was rejected for this position in March 1994 but waited until November 22, 1995, to file her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Because she filed her claim well after the 300-day statute of limitations, *see* 29 U.S.C. § 626(d)(2), the claim is time-barred. *See Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 540 (5th Cir. 1980).

### B.

We review Lapaglia's remaining claims under the burden-shifting format of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396

(5th Cir. 1995) (applying *McDonnell Douglas* to ADA actions); *Lindsey v. Prive Corp.*, 987 F.2d 324, 326, n.5 (5th Cir. 1993) (applying *McDonnell Douglas* to ADEA actions). Under this approach, the plaintiff must first make out a *prima facie* case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802. If he meets this burden, the burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision. *See id.* If the defendant is so successful, the burden then reverts to the plaintiff to prove with "a new level of specificity" that the defendant's reason is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516 (1993).

To prove her *prima facie* case, Lapaglia must demonstrate (1) that she belongs to a protected class; (2) that she applied and was qualified for a job; (3) that despite her qualifications, she was rejected; and (4) that after her rejection, the position remained open while the employer continued to seek applicants from persons of complainant's qualifications. *See McDonnell Douglas*, 411 U.S. at 802. Among the jobs for which Lapaglia applied was a position in the fleet department similar to her previous job with Big Three Industries. She learned about the position from a friend and former supervisor, Jim Mew, who instructed Lapaglia to contact Ray Sidenblad, the current fleet manager, about the position. Although Lapaglia did so, Sidenblad never returned her call.

Lapaglia now asserts that discrimination alone explains his

4

failure to return her calls. In fact, ALAC submitted evidence demonstrating that no one was hired to fill this position. The job was posted by Sidenblad's predecessor, but he decided eventually that the position was unnecessary. Because Lapaglia failed to prove that after her rejection the job remained open and that similarly qualified applicants were considered, she has not made out her *prima facie* case.

Lapaglia next applied for a position as a telephone operator. After being informed by a current employee of ALAC that one of the telephone operators had relocated, Lapaglia contacted Ron Speer about the position. Speer never returned her call.

Again, Lapaglia asserts boldly that discrimination is the only explanation for his actions. ALAC proffered uncontested summary judgment evidence demonstrating that the currently-employed operator changed locations only, and thus a new position never became available. Lapaglia has failed, therefore, to establish an element of her *prima facie* case.

The next dispute involves a temporary position with the cryogenics department at ALAC. The parties dispute whether Lapaglia or Mew contacted the other first about the job, but in any event, Mew informed Lapaglia that he was authorized to hire only a temporary worker to fill the position. Lapaglia rejected this position, because she desired full-time employment.

Although Lapaglia admits that she turned down the position,

she argues that ALAC's "temporary position story" was concocted to coerce her into rejecting the job. Nothing but wild speculation and conjecture support her allegations. Because rejection is an element of her *prima facie* case, Lapaglia's discrimination claim fails.

Lapaglia's next claim stems from the same temporary cryogenics position. Six weeks after she rejected the temporary position with the cryogenics lab, Mew received permission to convert the temporary position into a permanent one. Mew informed Lapaglia of this change and allowed her to submit a resume. Subsequently, Mew decided to hire permanently Virginia Holcomb, the same person who had held the temporary position, noting that Holcomb had done an excellent job and that her retention would help reduce ALAC's training costs.

Assuming *arguendo* that Lapaglia has satisfied the *prima facie* case, Mew's explanation for the Holcomb hire is sufficiently neutral and non-discriminatory. Under the *McDonnell Douglas* approach, Lapaglia must now prove with "a new level of specificity" that the reason offered by ALAC is a pretext for discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. As she has presented no evidence of pretext, Lapaglia has failed to carry this burden. *See Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996 (en banc) (noting that to avoid summary judgement in an ADEA case, the plaintiff must put forth substantial evidence that (i) creates

a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (ii) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains).

Lapaglia also applied for four positions with ALAC that were advertised in the *Houston Chronicle*. One of the positions specifically requested that applicants speak French, which Lapaglia did not. Thus, she was not qualified for this position.

Another position advertised in the *Houston Chronicle* was a secretarial position with Marty Buckley. Consistent with ALAC's policy to source candidates from within the organization whenever possible, Buckley did not consider external applicants. Lapaglia does not dispute Buckley's decision to promote internally, nor has she proffered any evidence suggesting that Buckley's decision to hire an internal candidate was a pretext for improper reasons. The district court correctly granted summary judgment.

With respect to the other two positions that were advertised in the *Houston Chronicle*, Lapaglia asserts only that she was never hired for them. She has not demonstrated that she was qualified for them, nor that after she was rejected the position remained open to others with similar qualifications. Without such evidence, Lapaglia has failed to prove her *prima facie* case.

Lapaglia also applied for a secretarial position with Gregg Alexander, a position that expressly called for an executive

7

secretary with skills in the areas of treasury and finance. Notably absent from Lapaglia's resume were such skills. Furthermore, Lapaglia's resume was devoid of any executive secretarial experience in the last twelve years.

But even assuming *arguendo* that Lapaglia was qualified for the position, ALAC has proffered a legitimate, nondiscriminatory reason for hiring Cathy Howell, an external applicant. A Certified Professional Secretary, Howell had worked for the previous seven years as a secretary or executive assistant to corporate executives and had experience working in the finance and treasury areas. She also had worked with professional accounting firms for seven of the previous eight years.

Alexander proffered Howell's outstanding qualifications as a nondiscriminatory reason for his decision. Lapaglia has presented no evidence suggesting that this reason is pretextual or that creates an inference of discrimination. *See Rhodes*, 75 F.3d at 994. She has failed, therefore, to create a fact issue regarding this claim.

Lapaglia also applied for a secretarial position with Tim Bruce, which position was ultimately filled by Judy Truelove, an executive secretary for ALAC for the past seven years. Before that, Truelove had worked six years as the administrative assistant to the president of a real estate development company, and she had almost fifteen years' experience as an executive secretary. In

contrast, Lapaglia's resume did not describe any executive secretarial experience.

Except for Lapaglia, Bruce looked at internal applicants only. ALAC proffers as its nondiscriminatory reason for not hiring Lapaglia its policy of hiring the most qualified person for the job and of promoting existing employees. Lapaglia has put forth no evidence demonstrating that these reasons are pretextual. Furthermore, Truelove is older than Lapaglia.

When Lapaglia discovered that Truelove had been promoted to be Bruce's secretary, she applied immediately for the vacancy left by Truelove in Wayne Bowman's office. She has offered no evidence, however, that this position was ever posted or that anyone was ever hired to replace Truelove. Because she has not carried this burden, she has failed to establish her *prima facie* case for this claim.

## C.

Even assuming *arguendo* that Lapaglia has satisfied her burden of presenting a *prima facie* case with respect to any of her claims, she has presented no evidence suggesting that her denial for any of the positions was based upon her age or her association with her disabled husband. To prove pretext, Lapaglia first pointed to a 1992 executive meeting during which ALAC presented a single slide that described the need to hire a computer systems person younger

9

than age 35 and to enhance a pilot region team with "some young high caliber people." ALAC eventually deleted all references to age in the slide show and never implemented the plan. Not only are isolated, accidental, or sporadic discriminatory acts insufficient to establish the existence of a pattern or practice, *see Goff v. Continental Oil Co.*, 678 F.2d 593, 597 (5th Cir. 1982), but Lapaglia has failed to demonstrate any nexus between the positions for which she applied and this purported evidence of age discrimination, *see Lo v. Federal Deposit Ins. Corp.*, 846 F. Supp. 557, 564 (S.D. Tex. 1994) (citing *Turner v. North Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir. 1992)) (stating that "to rise above the level of a stray mark and constitute direct evidence of discrimination, a remark must (1) be made by the decision maker or one whose recommendation is sought by the decision maker; (2) be related to the specific employment decision challenged; and (3) be made close to the time to the decision."), *aff'd*, 52 F.3d 1066 (5th Cir. 1995).

Lapaglia also proffered a June 1993 memo that discussed the changing work force and the need to entrust positions of responsibility to young workers. This memo made no mention of any forbidden hiring or employment practices, but rather identified the need to bring into the fold new ideas, new business opportunities, entrepreneurs, and creative hires to facilitate the company's urgent need to grow and increase growth in sales and profits. The

10

memo described ALAC's previous mindset of restricting important responsibilities to employees over age 40 and suggested a change in this mindset by entrusting younger employees with greater amounts of responsibility.  If anything, the memo supports an inference that ALAC preferred older workers in the past.  In any event, absent Lapaglia's demonstration of a nexus between the 1993 memo and her failed hiring attempts in 1995, the evidence has no demonstrated relevance to her claims.  *See Lo*, 846 F. Supp. at 564.

Because Lapaglia has created no genuine issues of material fact concerning any of her discrimination claims, we AFFIRM.